Roscoe ROBINSON, et al., Plaintiffs,

v.

HARBERT INTERNATIONAL, INC., et
al., Defendants.

Civ. A. No. 89–AR–1745–S.

United States District Court,
N.D. Alabama, S.D.

Dec. 8, 1989.

J. Scott Vowell, Vowell & Meelheim, P.C., Birmingham, Ala., for plaintiffs.

Luther G. Stiff, III, Starnes & Atchison, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

The court has for consideration the motion to dismiss or alternatively, for summary judgment filed by defendants named in the above-styled cause, Harbert Corporation and Harbert International, Inc. (hereinafter collectively referred to as Harbert).

## PERTINENT UNDISPUTED FACTS

The plaintiffs seek to recover unpaid overtime wages for work they performed as Harbert employees on Kwajalein Atoll in the Republic of the Marshall Islands. Beginning in November of 1987, the plaintiffs worked six ten-hour days per week. The court will assume for the purposes of ruling on this motion that Harbert did not compensate plaintiffs at the time and one-half rate required by the Fair Labor Standards Act (FLSA) for all hours over forty. Inasmuch as the plaintiffs' sole basis for relief is § 7(a) of the FLSA, the question presented by defendants' motion is straightforward: Does the FLSA apply to the work performed from 1987 to the present on Kwajalein Atoll?

From 1947 to October 21, 1986 the United States was the "Administering Authority" of the "Trust Territory of the Pacific Islands." *Trusteeship Agreement for Former Japanese Mandated Islands,* July 18, 1947, 61 Stat. 3301, T.I.A.S. No. 1665, 8 U.N.T.S. 189 (hereinafter "Trusteeship

Agreement"). Kwajalein Atoll is located within the Trust Territory. The Trusteeship Agreement gave the United States jurisdiction over Kwajalein Atoll. *Trusteeship Agreement*, Article 3. The trusteeship terminated, however, as of October 21, 1986. The new relationship between the United States and Kwajalein Atoll is governed by the Compact of Free Association entered into by the Government of the United States and the Governments of the Republic of the Marshall Islands (RMI) and the Federated States of Micronesia. *Compact of Free Association Act of 1985*, Pub.L. No. 99–239, 99 Stat. 1770 (1986), *reprinted in* 48 U.S.C. § 1681 note.

## CONCLUSIONS OF LAW

The sole issue presented in this motion, considered as a motion under Rule 12(b)(6), F.R.Civ.P., is whether the FLSA applies to work performed after 1986 on Kwajalein Atoll. The plaintiffs claim that it does, and they cite the actual language of the FLSA as support. 29 U.S.C. § 213(f) (West Supp. 1989). Harbert contends that the FLSA does not apply to work performed on Kwajalein Atoll and cites Section 171 of the Compact of Free Association. The court concludes that the FLSA no longer applies to work performed on Kwajalein Atoll and that this action is therefore due to be dismissed with prejudice, because it cannot be amended to give it viability and no facts are presented upon which to base any alternative theory of recovery.

It is undisputed that the FLSA applied to work performed on Kwajalein Atoll prior to October 21, 1986. Harbert contends that the FLSA ceased to apply thereafter in light of Section 171 of the Compact of Free Association. That Section provides:

Except as provided in this Compact or its related agreements, the application of the laws of the United States to the Trust Territory of the Pacific Islands by virtue of the Trusteeship Agreement ceases with respect to the Marshall Islands and the Federated States of Micronesia as of the effective date of this Compact.

*Compact of Free Association*, Section 171. Plaintiffs contend that Section 171 has no effect on the application of the FLSA to Kwajalein Atoll because the FLSA applies of its own force, not "by virtue of the Trusteeship Agreement." 29 U.S.C. § 213(f) (West Supp.1989). § 213(f) reads as follows:

The provisions of sections 206, 207, 211, and 212 of this title shall not apply with respect to any employee whose services during the workweek are performed in a workplace within a foreign country or within territory under the jurisdiction of the United States other than the following: a State of the United States; the District of Columbia; Puerto Rico; the Virgin Islands; outer Continental Shelf lands defined in the Outer Continental Shelf Lands ...; American Samoa; Guam; Wake Island; Eniwetok Atoll; *Kwajalein Atoll*; and Johnston Island.

(emphasis supplied).

■■■ Plaintiffs' argument that the FLSA applies to Kwajalein Atoll by its own force is fallacious. The FLSA was amended in 1966 so as expressly to apply to work performed in Kwajalein Atoll. 29 U.S.C. § 213(f). The listing of territories to which the FLSA is to apply includes only territories over which the U.S. had jurisdiction as of the 1966 amendment. It was the Trusteeship Agreement, however, that gave the U.S. jurisdiction over Kwajalein Atoll. *Trusteeship Agreement*, Article 3. It is not contended that the U.S. had jurisdiction, whether it be prescriptive, enforcement, or adjudicative in nature, over any and all conduct that occurred on Kwajalein Atoll prior to 1947. At the time that § 213(f) was amended to include the reference to Kwajalein Atoll, Kwajalein Atoll was under the jurisdiction of the U.S. *"by virtue of the Trusteeship Agreement."* Therefore, it is by virtue of the Trusteeship Agreement that the FLSA applied to Kwajalein Atoll.

■■■ The Compact of Free Association removed the U.S.' jurisdiction over the Marshall Islands, except as provided for in the Compact. The RMI is now a fully independent and sovereign nation. *Temengil v. Trust Territory of Pacific Islands,*

881 F.2d 647, 650 (9th Cir.1989). "Free association" status affords "full internal self-government: United States sovereignty [does] not apply...." *Matter of Bowoon Sangsa Co., Ltd.,* 720 F.2d 595, 600 (9th Cir.1983). "Free association" is both a temporary and transitional sovereign status of recent origin, dating back to a United Nations General Assembly Resolution of 1960. *Id.* The resolution makes clear that the degree of "outside interference" or "consultations" is limited by democratic constitutional principles and "the terms of the free association agreed upon." G.A. Res. 1541, 15 U.N.G.A.O.R.Supp. (No. 21) at 29–30, U.N. Doc. A/4684 (1960). "United States laws apply [to a freely associated State such as the RMI] only by mutual agreement." *Bowoon Sangsa,* 720 F.2d at 600. The terms of the instant agreement, the Compact, do not provide for the application of the FLSA to Kwajalein Atoll.

The court does not conclude, as it need not, that the RMI is free from the U.S.' influence. In fact, and as the plaintiffs point out, the Compact of Free Association ensures that the U.S. will continue to exert influence over the islands. The fact that the U.S. will continue to influence the islands does not mean that U.S. law will continue to apply generally. The Compact carefully defines the United States–Republic of the Marshall Islands relationship. Section 171 ceases the application of U.S. laws to the Marshall Islands unless the Compact or related agreements provide for their application. Plaintiffs have failed to cite any portion of the Compact or a subsequent enactment which would indicate that the FLSA is to apply on Kwajalein Atoll.

■ This court concludes, as did the Ninth Circuit in *Temengil,* that the Republic of the Marshall Islands is a sovereign and independent country. As a result, the U.S.' jurisdiction over the islands in the meaning of § 213(f) has ceased. All of the other territories mentioned in the clause with Kwajalein Atoll were in 1966, and for the most part still are, territories over which the U.S. exercised prescriptive jurisdiction. Read as a whole, § 213(f) evidences Congress' intent to have the FLSA apply only within the territorial jurisdiction of the U.S. That territorial jurisdiction no longer includes Kwajalein Atoll.

Plaintiffs point out that Congress explicitly removed the Panama Canal Zone from § 213(f) when the U.S. ceded authority over the Zone to the Republic of Panama. The obvious distinction between the Panama Canal Zone Treaty and the Compact of Free Association is that it was contemplated that the Canal Zone would remain partially under the jurisdiction of the U.S. for a transitional period of thirty months following the implementation of the treaty. The RMI became a foreign country when the Compact took effect. As a result, Kwajalein Atoll immediately fell within the first provision of § 213(f).

■ Plaintiffs next contend that Harbert seeks to repeal § 213(f)'s application of the FLSA to Kwajalein Atoll by implication. Plaintiffs use this upon which to argue that because implied repeals are disfavored the court should find that § 213(f) is still in effect. Because Section 171 of the Compact does not mention § 213(f) explicitly, it does not repeal expressly the application of the FLSA to Kwajalein Atoll. While repeals by implication are disfavored, a later act will necessarily repeal a prior act by implication if the two are in irreconcilable conflict. *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 469, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262 (1982) (citations omitted).

Plaintiffs say that § 213(f) and Section 171 are not in conflict. They argue that "the Compact clearly contemplates the continued effect of certain United States laws." Consequently, they claim that U.S. law continues to apply generally and § 213(f) is not in conflict. To be sure, the Compact of Free Association provides for the continued application of *some* U.S. laws in the Marshall Islands. Section 171 admits of that fact; only those laws that are mentioned specifically in some agreement between the U.S. and RMI, however, will continue in effect in the Marshall Islands. Plaintiffs' hopeful conclusion that U.S. law therefore continues to apply generally in

the Marshall Islands simply does not follow.

Lastly, plaintiffs cite portions of a U.S.–Palau compact which coordinate tax burdens between the two countries as support for the proposition that U.S. tax law continues to apply there. The U.S.–RMI Compact also gives the Government of RMI taxing authority and regulates taxation between the two countries. Section 252 (allowing RMI to tax U.S. persons subject to jurisdictional constraints); Section 253 (exempting RMI citizens from certain U.S. taxes); Section 254 (providing possible exemption from U.S. taxes to certain RMI residents). While the provisions provide for the continued application of U.S. tax law—subject to typical jurisdictional constraints—and then provide exemptions to the application of such law, Section 252 of the Compact explicitly recognizes that the government of RMI may tax "within its ... jurisdiction ... in such manner as [it] deems appropriate." In other words, just as the new government of RMI can create its own system of taxation, it can create its own scheme of employment law.

■ This court concludes that Section 171 of the Compact of Free Association directly conflicts with § 213(f) of Title 29. § 213(f), the earlier law, states that the FLSA applies to Kwajalein Atoll. However, Section 171 eliminates the FLSA's application to that island. There simply is no way to reconcile the two; either the FLSA applies, or it does not. In fact, § 213(f) conflicts with itself regarding Kwajalein Atoll. Because Kwajalein Atoll is now located in a foreign country, the first portion of § 213(f) indicates that the FLSA does not apply there; however, at the end of the section, Kwajalein Atoll is specifically listed as a U.S. territory where the FLSA applies.

As already pointed out, when two laws are in direct conflict, the later in time controls. *Kremer*, 456 U.S. 461, 102 S.Ct. 1883; Sutherland Stat. Const. § 23.09 (4th Ed.1985). The first law, § 213(f), was adopted in 1966. The last amendment to that statute was enacted in 1979. The Compact of Free Association was signed in 1985 and approved by Congress in 1986. Because the Compact of Free Association came later than the last amendment to § 213(f), Section 171 controls, and the FLSA no longer applied to work performed on Kwajalein Atoll.

■ The Compact of Free Association has the effect of law. The court recognizes that the Compact is not a treaty in the constitutional sense, as it was not confirmed by two-thirds of the Senate. U.S. CONST. Art. II, § 2, cl. 2. Nor is the Compact of Free Association Act of 1985 a law in the constitutional sense, as it was not signed by the President. *See I.N.S. v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (discussing constitutional requirements of bicameralism and presentment). The Compact was negotiated by the executive branch and was approved in a joint resolution by both houses of the Congress in the Compact of Free Association Act of 1985. Pub.L. No. 99–239, 99 Stat. 1770 (1986), *reprinted in* 48 U.S.C. § 1681 note. The President subsequently issued an order providing management responsibilities to various executive branch officials. Exec. Order No. 12569, 51 Fed.Reg. 37171 (Oct. 16, 1986). The necessities of international law have caused governments to interact in ways unknown to the drafters of the Constitution. The President's authority in conducting foreign affairs includes the power to enter into certain binding agreements, such as the Compact of Free Association, with foreign nations without complying with the formal requisites of a treaty. *See Dames & Moore v. Regan*, 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981). The President's authority to act is especially strong when the President acts pursuant to a specific congressional enactment. *Id.* at 669–70, 101 S.Ct. at 2981. In this case, the President acted on the authority of 48 U.S.C. § 1681a (1954), and the results of his action, the Compact, received explicit congressional approval in the Act of 1985. As a result, Section 171 of the Compact controls over 29 U.S.C. § 213(f).

■ The law of the United States may be applied to conduct by U.S. nationals

on foreign soil without a positive direction that the law should apply in that country. The parties in the instant case have searched for some positive grant or denial of authority, whether it be from the U.S. Congress or by the consent of the Government of the RMI, to indicate that the FLSA should or should not be applied on Kwajalein Atoll. It is possible for the FLSA to apply absent specific direction. Many U.S. courts have held that U.S. antitrust laws, which do not specifically apply extra-territorially, apply to conduct in other nations. *See e.g., United States v. Aluminum Co. of America*, 148 F.2d 416 (2d Cir.1945) (*Alcoa*); *Timberlane Lbr. Co. v. Bank of America, N.T. & S.A.*, 549 F.2d 597 (9th Cir.1976). Some commentators have advocated that courts should apply U.S. employment laws to employers abroad. *See* Street, *Application of U.S. Fair Employment Laws to Transnational Employers in the United States and Abroad*, 19 N.Y. U.J. Int'l L.Pol. 357 (1987); Edwards, *International Law and Employment Discrimination*, 8 Okla. City U.L.Rev. 1 (1983). A question requiring an answer before applying U.S. law extra-territorially, according to Hon. Learned Hand, is whether Congress intended to impose liability for conduct occurring beyond our borders. *Alcoa*, 148 F.2d at 443. For FLSA purposes, Congress made its intention clear in the statute itself, § 213(f). "The provisions of [the FLSA] ... shall not apply with respect to any employee whose services during the workweek are performed in a workplace within a foreign country ..." Consequently, 29 U.S.C. § 207 shall be given no extraterritorial effect.

In conclusion, because the work here was admittedly performed in a country beyond the reach of the FLSA, plaintiffs have not stated a cause of action against Harbert for which relief can be granted. For that reason, this action must be dismissed. For the same reason, and inasmuch as plaintiffs would posit this court's federal question jurisdiction upon 29 U.S.C. § 207, the court is alternatively required to dismiss the action for lack of subject matter jurisdiction.

An appropriate, separate order will be entered.